IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE:<br><br>GULFCOAST IRREVOCABLE TRUST<br><br>    Debtor | CASE NO. 12-06338<br><br>CHAPTER 11 |
| IN RE:<br> GULFCOAST IRREVOCABLE<br> TRUST XIV<br><br>    Debtor | CASE NO. 12-06339<br><br>CHAPTER 11 |
| IN RE:<br><br>GULFCOAST IRREVOCABLE<br>TRUST XIX<br><br>    Debtor | CASE NO. 12-06340<br><br>CHAPTER 11 |

OPINION AND ORDER

These three (3) cases are before the court upon the motion requesting reconsideration in each case of this Court's Orders denying the GULFCOAST IRREVOCABLE TRUST I, GULFCOAST IRREVOCABLE TRUST XIV, and GULFCOAST IRREVOCABLE XIV, and GULFCOAST IRREVOCABLE TRUST XIX (hereinafter referred to as the "Trusts" or "Debtors") an evidentiary hearing based on the court's ruling that the proffered facts, even if proven (or shown), do not establish that the Debtors are business trusts since they failed to satisfy the crucial test of whether the trust was created to transact business or a commercial activity for the benefit of a group of investors (Case No. 12-06338, Docket No. 101, Case No, 12-06339, Docket No. 100 and Case No. 12-06340, Docket No. 100). The Federal Deposit Insurance Corporation, as receiver for Westernbank Puerto Rico (hereinafter referred to as the "FDIC-R") opposed the Debtors' motion for reconsideration in all three (3) cases (Case No. 12-06338, Docket No. 102, Case No. 12-06339, Docket No. 101 and Case No. 12-06340, Docket

-1-

No. 101). For the reasons stated below the motions for reconsideration in all three (3) cases are hereby denied.

*Fed. R. Civ. P 59(e)*

A motion for reconsideration of an order or judgment is not recognized by the Federal Rules of Civil Procedure. In re Pabon Rodriguez, 233 B.R. 212, 218 (Bankr. D.P.R. 1999) aff'd, 2001 WL 958803 (1st Cir. 2001) (citing Van Skiver v. United States, 952 F. 2d 1241, 1243 (10th Cir. 1991)). Federal courts treat such a motion as either a motion to alter or amend judgment under Fed. R. Civ. P. 59(e) or a motion for relief of judgment under Fed. R. Civ. P. 60(b). "These two rules are distinct; they serve different purposes and produce different consequences. Which rule applies depends essentially on the time a motion is served. If a motion is served within fourteen (14) days of the rendition of judgment, the motion ordinarily will fall under Rule 59(e). If the motion is served after that time, it falls under Rule 60(b). Id. In the instant case, the Debtors' motions for reconsideration were filed thirteen (13) days after the Orders for which reconsideration was sought were entered. Therefore, the motion will be treated as one under Fed. R. Civ. P. 59(e) made applicable here through Fed. R. Bankr. P. 9023.

Fed. R. Civ. P. 59(e) authorizes the filing of a written motion to alter or amend a judgment after its entry. The motion must demonstrate the "reason why the court should reconsider its prior decision" and "must set forth facts or law of a strongly convincing nature" to induce the court to reverse its earlier decision. Pabon Rodriguez, 233 B.R. at 218 (citations omitted). The movant "must either clearly establish a manifest error of law or must present newly discovered evidence." Id. See also; BBVA v. Vazquez (In re Vazquez), 471 B.R. 752, 760 (B.A.P. 1st Cir. 2012), citing Aybar v. Crispin-Reyes, 118 F.3d 10, 16 (1st Cir. 1997).The party cannot use a Rule 59(e) motion to cure its own procedural failures or to introduce new evidence or advance arguments that could and should have been presented originally to the court. Id. Generally, when a party is made aware that a particular issue will be relevant to its case but fails to produce readily available evidence pertaining to that issue, the party may not introduce that

evidence to support a Rule 59(e) motion. Id. Neither can the party use this motion to raise novel legal theories that it had the ability to address in first instance. Id. The federal courts have consistently stated that a motion for consideration of a previous order is an extraordinary remedy that must be used sparingly because of interest in finality and conservation of scarce judicial resources. Id. In practice, Fed. R. Civ. P. 59(e) motions are typically denied because of the narrow purposes for which they are intended. Id.

*Debtors' Arguments & Discussion*

The court in its June 20, 2013 Order held that: "…an evidentiary hearing is not necessary, as the proffered facts, even if established, do not establish that the Debtors are business trusts since they fail to satisfy the crucial test of whether the trust was created to transact business or a commercial activity for the benefit of a group of investors. See In re Medallion Realty Trust, 103 B.R. 8, 9-10 (Bankr. D. Mass. 1989) aff'd, 120 B.R. 245 (D. Mass. 1990)." (Case No. 12-06338, Docket No. 98, Case No. 12-06339, Docket No. 97 and Case No. 12-06340, Docket No. 97). The Debtors argue that the court: "…failed to take into account multiple factors that support said conclusion. Furthermore, Debtors respectfully understand that the Court placed undue emphasis on criteria that bear no relevance in the proper evaluation of whether the trusts are business trusts or not." (Case No. 12-06338, Docket No. 102, Case No. 12-06339, Docket No. 101 and Case No. 12-06340, Docket No. 101). The Debtors further argue that: (i) "…to qualify as a business trust the operations of the Trusts need not be undertaken on a for profit basis. Thus, the test is whether the Debtors generate income or not, but rather if they are engaged in business;" (ii) "Debtors are not passive owners or holders of shares of certain corporations but rather actively participate in business affairs[1];" and (iii) "…by perfecting the necessary financing to facilitate the operations

---

[1] The Debtors argue that they engage in the following business activities: "(a) [s]election of the type of projects to develop, i.e.; commercial (retail or office) or residential (multi-family or single family); (b) [r]eview appropriate market areas in Puerto Rico to develop the projects. Locate a specific suitable property for the development; (c) [p]repare market/feasibility studies and appraisals prepared by licensed appraisers in Puerto Rico; (d) [i]nvestigate financing options with various lending institutions in Puerto Rico; (e) [p]repare cost estimates to ascertain the financial viability of the projects; (f) [d]evelop comprehensive sales and marketing plans;" (g) [n]egotiate and close financing of the projects; including the execution of guarantees to obtain the necessary financing. (Case No. 12-06338, Docket No. 102, Case No. 12-06339, Docket No. 101 and Case No. 12-06340, Docket No. 101).

of their subsidiaries, Debtors are indeed engaging in business activities and as such qualify as business trusts;" (iv) "…Gulfcoast Irrevocable Trust I, on June 2005, said trust obtained a heavy equipment loan in Puerto Rico in [the] amount of $1,222,000.00. This loan was paid off to the FDIC in February 2012. The sale resulted in a surplus of approximately $300,000 that was seized by the FDIC under various Security Agreements;" (v) "…Mr. Michael J. Scarfia has a family trust named The Scarfia Irrevocable Trust wherein assets of non-business nature are held for the sole purpose of liability and asset protection;" (vi) "[t]he Court further declined to take judicial notice of the Schedules and Statements of Financial Affairs submitted in the above captioned cases. The Court also failed to take judicial notice of the Minutes of the 341 Meeting of Creditors of all cases, wherein it was clearly stated that all the Debtors had submitted to the Office of the U.S. Trustee copies of their tax returns for the last two years and their last financial statements; and (vii) "…the court failed to consider the affidavit of Perter Makris, C.P.A. where he stated in paragraphs 3 and 4 that '[m]y firm was retained to provide various accounting and tax services for Gulfcoast Irrevocable Trust, Gulfcoast Irrevocable Trust XIV, and Gulfcoast Irrevocable Trust XIX since formation of the trusts in 1988. I have prepared numerous Financial Statements and Trust Tax Returns for Gulfcoast Irrevocable Trust, Gulfcoast Irrevocable Trust XIV, and Gulfcoast Irrevocable Trust XIX. In addition, all general business discussions regarding the operation of these trusts have already been centered upon maximizing profit and tax planning."

This court in its June 20, 2013 Order discussed all of the legal and factual points the Debtors allege the court failed to consider. The court in its Order for the three (3) Trusts based its ruling upon the following:

"The court concludes that the Debtors have failed to rebut the preliminary findings and conclusions made by this court in the Opinion and Order entered on November 30, 2012. The Debtors' statement of material facts regarding the eligibility of the same to file as business trusts under 11 U.S.C. §101(9)(A)(v) was supported by an affidavit of Mr. Michael J. Scarfia as trustee of all three (3) Trusts and an affidavit of CPA Peter Markis whose firm has provided various accounting and tax services for the Trusts. The court notes that the Debtors did not include financial statements, income tax returns, and transactional documents pertaining to the Trusts from prior years as evidence to rebut the court's decision that the Trusts are not eligible to file as business trusts. In addition, the Schedules and Statement of Affairs submitted by the individual Debtors support the

conclusion that the Trusts are not business trusts. The court declines to take judicial notice regarding the information asserted in Debtors' Schedules and its Statement of Financial Affairs pursuant to Fed. R. Evid. 201(c). However, the statements contained in the Debtors' bankruptcy petition and schedules may be considered as admissions pursuant to Fed. R. Evid. 801(d)(2), and as such may estop the Debtors from alleging otherwise. See In re Bohrer, 266 B.R. 200, 201 (Bankr. N.D. Cal. 2001) citing In re Gervich, 570 F.2d 247 (8th Cir. 1978) ("Statements in bankruptcy schedules are executed under penalty of perjury and when offered against a debtor are eligible for treatment as judicial admissions."); In re Moore, 269 B.R. 864 (Bankr. D. Idaho 2001).

Debtor Gulfcoast Irrevocable Trust in line item 1 (Income from employment or operation of business) provides that year to date gross income for this particular Trust is $0, last year's gross income is $0 and the gross income from the year before is $0. Debtor Gulfcoast Irrevocable Trust in said line item provides that, "[a]ll these years, Debtor has suffered losses." (Case. No. 12-06338, Docket No. 29). The court further notes that Debtor Gulfcoast Irrevocable Trust does not list any trade creditors or other debts that customarily result from the operation of a business activity. The only claims Debtor Gulfcoast Irrevocable Trust includes are listed on Schedule F. Debtor Gulfcoast Irrevocable Trust in its Schedule F (Creditors Holding Unsecured Nonpriority Claims) includes only claims in which the Debtor is the guarantor for related entities and the claims are all listed as disputed and the creditor is the FDIC; namely; (i) JM Ponce III, L.P., SE in the amount of $11,490,783; (ii) Yasscar Development Corp. in the amount of $14,653,274; (iii) Yasscar Caguas Development, Corp. in the amount of $16,887,089; (iv) Sabana Del Palmar, Inc. in the amount of $9,002,934; (v) Sabana Del Palmar, Inc. in the amount of $32,002,112; and (vi) MJS Las Croabas Properties, Inc. in the amount of $20,452.186. (Case No. 12-06338, Docket No. 28).

Debtor Gulfcoast Irrevocable Trust XIV in line item 1 (Income from employment or operation of business) provides that year to date gross income for this particular Trust is $0, last year's gross income is $0 and the gross income from the year before is $0. (Case. No. 12-06339, Docket No. 28). The court notes that Debtor Gulfcoast Irrevocable Trust XIV does not list any trade creditors or other debts that customarily result from the operation of a business activity. The only claims Debtor Gulfcoast Irrevocable Trust XIV includes are listed on Schedule F. Debtor Gulfcoast Irrevocable Trust XIV in its Schedule F (Creditors Holding Unsecured Nonpriority Claims) includes only claims in which the Debtor is the guarantor of related entities and the claims are all listed as disputed and the creditor is the FDIC; namely; (i) Yasscar Development Corp. in the amount of $14,653,274; (ii) Yasscar Caguas Development, Corp. in the amount of $16,887,089; and (iii) MJS Las Croabas Properties, Inc. in the amount of $20,203,938. (Case No. 12-06339, Docket No. 27).

Debtor Gulfcoast Irrevocable Trust XIX in line item 1 (Income from employment or operation of business) provides that year to date gross income for this particular Trust is $0, last year's gross income is $0 and the gross income from the year before is $0. (Case. No. 12-06340, Docket No. 28). The court notes that Debtor Gulfcoast Irrevocable Trust XIX does not list any trade creditors or other debts that customarily result from the operation of a business activity. The only claims Debtor Gulfcoast Irrevocable Trust XIX

includes are listed on Schedule F. Debtor Gulfcoast Irrevocable Trust XIX in its Schedule F (Creditors Holding Unsecured Nonpriority Claims) includes only claims in which the Debtor is the guarantor and the claims are all listed as contingent, unliquidated and disputed; namely; (i) loan of JM Ponce III, LP, SE, in the amount of $11,490,783; and (ii) MJS Las Croabas Properties, Inc. in the amount of $20,203,938. (Case No. 12-06340, Docket No. 27).

This court in the November 30, 2012 Opinion and Order concluded that the Trusts were not business trusts based on the following: (i) the text of the trust agreements establish *prima facie* that the Debtors are family trusts designed as an estate planning device; (ii) "[t]he Debtors as a separate legal entity are not actually operating as a business as their monthly report of operations on file show no or minimal expenses or cash flow. The Trusts are merely holding companies of affiliates operating in Puerto Rico;" and (iii) "[t]he fact that the Debtors may own the total or a percentage of shares in corporations that have filed for or may be eligible to file a bankruptcy petition does not mean that the Trusts, as holders of the shares, are themselves eligible to file a bankruptcy petition." The court's reasoning for concluding that the Trusts are not business trusts was the following;

> '[t]he text in the trust agreements for the debtors shows *prima facie* that the same are family trusts designed as an estate planning device. As such, the Trusts are not business trusts that qualify to file a bankruptcy petition because the same may not be considered to be a corporation. Moreover, even if related or affiliate corporations may be eligible to file for bankruptcy, '[t]he filing of a petition by a parent does not have the effect of filing a petition for bankruptcy on behalf of subsidiary corporations. [] Each corporate entity is separate for bankruptcy purposes.' [Citations omitted] Hon. Nancy C. Dreher and Hon. Joan Feeney, Bankruptcy Law Manual §3.4 (5th ed. 2012). The fact that the Debtors may own the total or a percentage of shares in corporations that have filed for or may be eligible to file a bankruptcy petition does not mean that the Trusts, as holders of the shares, are themselves eligible to file a bankruptcy petition."(Case No. 12-06338, Docket No. 54, Case No. 12-06339, Docket No. 53, Case No. 12-06340, Docket No. 53).'

The Debtors argue that they are business trusts as they own shares in corporations which, in turn, do business as any regular corporation. However, such factual condition does not make the holding trust a business trust. The corporations are separate entities. In addition, a "debtor-shareholder's ownership of corporate stock does not vest the debtor's estate with a pro rata share of the physical assets of the corporation itself." 9 Am. Jur. 2D *Bankruptcy* §1314 (2013). The court finds that the Debtors have been unable to establish any business activity in which they are actively engaged." (Case No. 12-06338, Docket No. 98, Case No. 12-06339, Docket No. 97 and Case No. 12-06340, Docket No. 97).

The court finds that the Debtors have failed to clearly establish a manifest error of law since they have not provided the court with a legal or factual basis that supports their position

that the Debtors are actively engaged in a particular type of business. Moreover, the court in its previous Order discussed all the factors the Debtors argue that the court failed to consider. The court finds that the Debtors have simply presented the same arguments (rehashed the same arguments) included in previous motions.

As to the Debtors' Financial Statements and the Income Tax Returns[2] for previous years which were first provided (presented) to the court as part of the motion for reconsideration the same does not constitute newly discovered evidence. The court notes that all of the Debtors' Financial Statements lacked an Income Statement, a Cash Flow Statement and the Statement of Changes in Net Worth or Stockholder's Equity. Thus, the Trusts' Financial Statements are deficient (simply not informative/only provide a piece of the puzzle) since they included only a Balance Sheet and Notes to the Financial Statements. The Income Statement is an important component of any Financial Statement since it measures the performance of a business during an accounting period. The Cash Flow Statement is also an essential component of any Financial Statement since it records the amounts of cash and cash equivalents entering and leaving a company. Moreover, it allows investors to understand how a company's operations are running since it provides the necessary information to understand where the money is coming from and how it is being spent.

### Conclusion

For the reasons stated above, this court holds that the Debtors have not established a manifest error of law nor presented newly discovered evidence in its motion for reconsideration which would warrant this court to reconsider its Order entered on June 20, 2013, finding that an evidentiary hearing is not necessary, as the proffered facts, even if established, do not evince

---

[2] The Debtors in their motions for reconsideration provided (presented) for the first time the following Financial Statements and Income Tax Returns: (1) Income Tax Returns for the years 2009, 2010 and 2011 for Gulfcoast Irrevocable Trust I, Gulfcoast Irrevocable XIV, and Gulfcoast Irrevocable Trust XIX; (2) Income Tax Return for the year 2012 for the Gulfcoast Irrevocable Trust XIV; (3) Income Tax Extensions for Gulfcoast Irrevocable Trust I and Gulfcoast Irrevocable Trust XIX; (4) Financial Statement for the year 2005 for the Gulfcoast Irrevocable Trust XIX; (5) Financial Statements for the years 2008 for all three (3) Trusts; (6) Financial Statements for the year 2009 for Gulfcoast Irrevocable Trust I and Gulfcoast Irrevocable Trust XIV; (7) Financial Statements for the year 2010 for all three (3) Trusts; and (8) Financial Statements for the year 2011 for Gulfocast Irrevocable Trust I and Gulfcoast Irrevocable Trust XIX.

that Debtors are business trusts since they fail to satisfy the crucial test of whether the trust was created to transact business or a commercial activity for a group of investors. Therefore, the motions for reconsideration in all three (3) cases are hereby denied.

SO ORDERED.

In San Juan, Puerto Rico, this 10th day of December, 2013.

Enrique S. Lamoutte
United States Bankruptcy Judge